IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

TERRY GILLIAM,

      Plaintiff,

v.                             Civil Action No. 2:04-cv-00790

JO ANNE B. BARNHART,
Commissioner of Social
Security,

      Defendant.


**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Terry Gilliam (hereinafter referred to as "Claimant"), protectively filed an application for DIB on March 11, 2002, alleging disability as of May 18, 2001, due to low back and

right foot pain.  (Tr. at 64-7, 93.)  The claim was denied
initially and upon reconsideration.  (Tr. at 39-40, 46-7.)  On
October 16, 2002, Claimant requested a hearing before an
Administrative Law Judge ("ALJ").  (Tr. at 48.)  The hearing was
held on April 29, 2003 before the Honorable Theodore Burock.  (Tr.
at 377-405.) A supplemental hearing was held on October 28, 2003.
(Tr. at 348-76.) By decision dated April 2, 2004, the ALJ
determined that Claimant was not entitled to benefits. (Tr. at 12-
25.)  The ALJ's decision became the final decision of the
Commissioner on June 4, 2004, when the Appeals Council denied
Claimant's request for review.  (Tr. at 4-6.)  On July 30, 2004,
Claimant brought the present action seeking judicial review of the
administrative decision pursuant to 42 U.S.C. § 405(g).

     Under 42 U.S.C. § 423(d)(5), a claimant for disability has the
burden of proving a disability.  See Blalock v. Richardson, 483
F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable impairment which can be expected to
last for a continuous period of not less than 12 months . . . ."
42 U.S.C. § 423(d)(1)(A).

     The Social Security Regulations establish a "sequential
evaluation" for the adjudication of disability claims.  20 C.F.R.
§ 404.1520 (2003).  If an individual is found "not disabled" at any
step, further inquiry is unnecessary.  Id. § 404.1520(a).  The

2

first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2003). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

3

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13; Finding No. 2, tr. at 24.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of lumbosacral disc disease, chronic pain syndrome, and depression. (Tr. at 19; Finding No. 3, tr. at 24.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 19; Finding No. 4, tr. at 24.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 22; Finding No. 6, tr. at 24, Finding No. 11, tr. at 25.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 22; Finding No. 7, tr. at 24.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as surveillance system monitor and sedentary clerk, such as order clerk, credit reference clerk, and circulation clerk, which exist in significant numbers in the national economy. (Tr. at 23; Finding No. 12, tr. at 24.)  On this basis, benefits were denied. (Tr. at 24; Finding No. 13, tr. at 24.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was

4

defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was 46 years old at the time of the administrative hearing. (Tr. at 380.) He has three years of college education in business. (Tr. at 382.) In the past, he worked in a retail hardware store, as a purchasing agent in construction, and as a laborer. (Tr. at 94, 144.)

The Medical Record

The court has reviewed all evidence of record, including the

medical evidence, and will discuss it further below as necessary.

    *1.   Physical Impairments*

    Claimant injured his back on May 18, 2001 while lifting a fifty to sixty pound bundle of molding at work. (Tr. at 143-4, 154.) Claimant sought chiropractic treatment with Abel C. Borromeo V, D.C. due to bilateral low back pain from May 2001 through May 2002. (Tr. at 165-231.) An MRI performed on July 29, 2001 showed disc bulges at L4-5 and L5-S1. (Tr. at 152.)

    Mohammad Ranavaya, M.D. evaluated Claimant on August 23, 2001 at the request of Worker's Compensation. (Tr. at 302). Claimant described diffuse low back pain, but denied any radiation of his pain. He denied any difficulties with his activities of daily living. (Tr. at 303.) He was not taking any medication. (Tr. at 304.) Dr. Ranavaya noted that Claimant had a normal gait and could fully squat and rise without difficulty. He also observed that Claimant's reported tenderness in his paralumbosacral area was non-reproducible, and also disappeared upon distraction. Claimant's motor strength was 5/5. (Tr. at 304.)

    Claimant's seated straight leg raising test was normal without pain, as were the hip and sacroiliac tests for pain. However, in the supine position, Claimant's straight leg test was 50 degrees on the left and 40 degrees on the right with reports of pain. (Tr. at 305.) Claimant had no muscle atrophy.

    Dr. Ranavaya scored Claimant on the Clinical Impression of

Somatic Amplification test and rated him at five (5). This suggests a component of pain in which the subjective complaints outweigh the objective findings. (Tr. at 305.) Dr. Ranavaya opined that Claimant was medically capable of returning to work. (Tr. at 309.)

Gail L. Smythe, M.D. assessed Claimant on December 18, 2001 upon referral from his chiropractor. Claimant reported back pain upon almost any kind of activity. (Tr. at 154.) He described the pain as aching, burning, numb, stinging, tingling, hot, sore, sharp, usually constant and annoying to excruciating. Rest and lying down on his side somewhat relieved the pain, as did consuming alcohol. Claimant reported drinking 8-12 cans of beer a day. (Tr. at 154-5.)

Dr. Smythe noted that Claimant had a non-antalgic gait and could heel and toe walk without difficulty. His straight leg tests were negative in both sitting and supine positions, except for some tightness at the back of his knee and thigh. Dr. Smythe observed some mild SI tenderness, without true spasm but with soft firmness. The range of motion in Claimant's lumbosacral spine was decreased upon flexion, lateral bending, and extension. Dr. Smythe did not detect any symptom magnification. (Tr. at 155.) She recommended an extensive physical therapy course to improve Claimant's range of motion. (Tr. at 155.) Similarly, in February 2002, Claimant's chiropractor concurred with a physical therapist that Claimant

should undergo a Work Conditioning Program. (Tr. at 175.)

In March, 2002, at the request of Claimant's attorney, Clifford H. Carlson, M.D. examined Claimant. (Tr. at 315.) Claimant had lower lumbar vertebral tenderness, bilateral lumbar paravertebral muscle tenderness, and right sacroiliac tenderness. (Tr. at 315.) Claimant had a good gait, but did not get up well to walk on his heels or toes. His motor strength in his lower extremities was intact. (Tr. at 315.) Claimant's straight leg raising test was 47 degrees on the left and 45 degrees on the right, with pain upon elevation of either leg. (Tr. at 316.) Dr. Carlson opined that Claimant suffered a chronic lumbosacral spine sprain/strain syndrome with aggravation of degenerative disease. (Tr. at 316.) He recommended and Worker's Compensation granted an 11% permanent partial disability award for this injury. (Tr. at 316, 145.)

Rodolpho Gobunsuy, M.D. evaluated Claimant at the request of DDS on June 26, 2002. (Tr. at 232-6.) Claimant was comfortable in both the sitting and supine positions. He had a slight antalgia favoring the right leg but walked steadily without aid. (Tr. at 233.) Claimant could walk on his heels and his toes, and could tandem walk. He could not squat. He could stand on his left leg but not his right. He was tender in the right sacroiliac area with paralumbar muscle spasm. He had no numbness in his right leg, and normal symmetrical reflexes in his lower extremities. (Tr. at 234-

5.)

State agency medical source Uma Reddy, M.D. completed a
Physical Residual Functional Capacity Assessment form on July 19,
2002. (Tr. at 238-44.) He opined that Claimant could occasionally
lift 50 pounds, could frequently lift 25 pounds, could sit, stand
or walk for about 6 hours in a normal 8-hour work day, and could
push or pull without restriction. (Tr. at 239.) Claimant could
occasionally climb, balance, stoop, kneel, crouch, or crawl, and
had no manipulative, visual or communicative limitations. (Tr. at
240-2.) He had no environmental limitations except that he should
avoid concentrated exposure to hazards. (Tr. at 242.) Dr. Reddy
commented that Claimant's allegations were partially credible and
that he had no neurological deficit. He wrote that Claimant
suffered muscle spasms, rather than nerve problems, and that his
residual functional capacity was reduced only as noted. (Tr. at
243.) These findings were affirmed by A.R. Gomez, M.D. on October
4, 2002. (Tr. at 244.)

Ulysses D. Agas, M.D. evaluated Claimant's complaints of
chronic back pain radiating into his right leg in August, 2002.
(Tr. at 270.) Claimant's straight leg raising tests were 20
degrees bilaterally. Dr. Agas noted that Claimant's leg strength
was weak on the right side. He diagnosed lumbar strain, chronic;
bulging disc at L4-5, L5-S1, with radiculopathy; and dessication
disc L1-2. (Tr. at 270.) He recommended analgesics and lumbar

therapy.  (Tr. at 270.)

In January, 2003 at Dr. Agas' request, Claimant underwent a series of electrodiagnostic nerve conduction studies.  (Tr. at 288-91.)  The impression was bilateral L4, L5, S1 radiculopathy affecting the bilateral peroneal and tibial nerve distributions, extending primarily into Claimant's right foot.  (Tr. at 290.) Lumbar spinal imaging was recommended.

In January 2003, Claimant refused lumbar therapy and other forms of physical therapy, stating that it only worsened his pain symptoms.  Dr. Agas remarked that he was unable to offer any other treatment for Claimant aside from pain medicines and muscle relaxants.  (Tr. at 285.)

In June, 2003, Roger C. Baisas, M.D. performed a neurosurgical consultation of Claimant.  (Tr. at 336.)  He observed that Claimant had a subtle limp favoring his right foot, sluggish right ankle jerk as compared with the left, a moderately restricted range of motion in the lumbar spine, and no motor or sensory loss of anatomical distribution.  Dr. Baisas diagnosed lumbosacral strain, ligament and joint.  He recommended a pain management program and a course of massage therapy, and advised that Claimant follow up with Dr. Agas for pain medications.  (Tr. at 336.)

2.  *Mental Impairments*

In April 2002, upon referral from his chiropractor, Claimant visited Logan-Mingo Mental Health Center, Inc.  (Tr. at 264.)  He

10

complained of depressed mood as a result of his job-related injury and inability to resume work. Psychiatrist I. Ahmad, M.D. diagnosed major depression, single episode, moderate to severe, with no psychotic features. He wished to rule out adjustment disorder and mood disorder. (Tr. at 261.) Claimant's Global Assessment of Functioning was 70. (Tr. at 262.) Claimant denied any substance abuse. (Tr. at 260.) In later notes, Dr. Ahmad wrote that Claimant was in denial about his drinking problem. (Tr. at 255.)

In September, 2002, Claimant reported that he had only drank twice in the past month, and said he was motivated to decrease his alcohol consumption. He was compliant with Celexa and described that it was helping him, that he felt calm, and that his mood was "decent", although he still cried a lot. He had no suicidal ideations. (Tr. at 277.)

In December, 2002, Dr. Ahmad noted that Claimant had run out of medicine and was becoming depressed. Claimant indicated that his "tears were back," that he felt worthless and useless, that his appetite had decreased. He indicated that he had suicidal ideations the day before. He continued to drink a case of beer on the weekends. (Tr. at 274.) Dr. Ahmad recommended counseling and an Alcoholics Anonymous group, and prescribed medications.

Dr. Ahmad completed a Medical Assessment of (Mental) Ability to do Work-Related Activities on December 12, 2002. (Tr. at 278-

81.)  He opined that Claimant had a good ability to follow work rules, a fair ability to relate to co-workers, a poor ability to deal with the public, use judgment, interact with supervisors, deal with work stresses, and maintain attention or concentration.  He had a fair ability to function independently.  He had a poor ability to understand, remember, and carry out complex or detailed job instructions, and a fair ability to understand, remember and carry out simple job instructions.  (Tr. at 279.)  His GAF was assessed at 60. (Tr. at 280.)  He had a fair ability to behave in an emotionally stable manner and to relate predictably in social situations.  He had a good ability to demonstrate reliability. (Tr. at 280.)

In March, 2003, Claimant reported having sudden anxiety attacks in which he felt short of breath, smothered, and shaky. (Tr. at 344.) He reported cold sweats and chest pain lasting 3 to 5 minutes.  These symptoms had begun 3 weeks prior to his visit. Claimant stated that his depression was better, that he had no crying spells, and had a good appetite.  His sleep was poor.  He had no suicidal ideations.  He continued to drink alcohol as before. (Tr. at 344.)  Dr. Agas prescribed Celexa and recommended Alcoholics Anonymous groups.

In June, 2003, Dr. Ahmad noted that Claimant was doing well with no panic attacks since his medication was increased in March. (Tr. at 343.)  His crying spells had decreased and he stated that

his mood was better and that his energy level was improving. He continued to drink five days a week, and Dr. Ahmad again advised that he seek treatment for this. (Tr. at 343.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) failed to give proper weight to the opinion of treating physician I. Ahmad, M.D.; (2) erred in his assessment of Claimant's pain and credibility; and (3) failed to consider the effect of Claimant's impairments in combination. He further argues that the ALJ's decision as a whole was not supported by substantial evidence.

The Commissioner responds that the ALJ's decision was correct and was supported by substantial evidence in all respects.

    *1.   Treating Physician*

Claimant argues that the ALJ should have given greater deference to the opinions of I. Ahmad, M.D., Claimant's treating psychiatrist, with respect to his mental limitations. He points to the Medical Assessment of Ability to do Work-Related Activities (Mental) form completed by the doctor, and asserts that the limitations described therein would prevent him from performing basic work activities. (Pl.'s Br. at 11-3.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to

provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(d)(2)(2003).  Nevertheless, a treating physician's opinion is afforded controlling weight only if two conditions are met: (1) it is supported by clinical and laboratory diagnostic techniques and (2) it is not inconsistent with other substantial evidence.  Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2)(2003). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2) (2003).

The ALJ discussed Dr. Ahmed's findings in the decision, and found them deficient in these respects.  (Tr. at 17.)  First, the ALJ noted that the Claimant's GAF was 60, indicating only moderate limitations.  This score was inconsistent with the degree of limitation Dr. Ahmad prescribed.  The ALJ further found that Dr. Ahmad's opinions were entitled to little weight in that they were not supported by the longitudinal record, and were not adequately explained. (Tr. at 17.)  After reviewing the evidence below, the court agrees with the ALJ's opinion.

The record reflects that in June 2002, Claimant's GAF score was 70, indicating only mild symptoms. (Tr. at 262.)  In September, 2002, Claimant reported that he was compliant with Celexa and felt that it was helping him.  He stated that his mood was "decent" and that he felt calm.  While Claimant reported that he still cried a

14

lot and felt worthless and useless, he had no suicidal ideations.
(Tr. at 277.) At his visit in December, 2002, Claimant indicated
that he had run out of medications 3 weeks prior to his visit and
that he was becoming depressed without them. (Tr. at 274.) He
reported crying spells, feelings of worthlessness and uselessness,
insomnia, and decreased appetite. He stated that he had
entertained suicidal thoughts the day before. (Tr. at 274.) It
was at this juncture that Dr. Ahmad completed the Assessment form.
(Tr. at 278-81.) However, despite the limitations he prescribed in
the form, Dr. Ahmad's treatment plan remained the same as it had
always been: he adjusted Claimant's medications and recommended
follow-up at the usual three-month interval. (Tr. at 273-4.) As
the ALJ noted, this history and level of treatment does not support
the limitations noted in the form.

    At his visit with Dr. Ahmad in March, 2003, Claimant reported
anxiety attacks, but stated that his depression was better and that
he had no crying spells. He had a good appetite and no suicidal
thoughts. He was calm and cooperative, and had good eye contact
and normal speech. (Tr. at 344.) Claimant stated in June 2003 that
his medications were helping him, that he no longer had panic
attacks, that he was "doing well", that his mood was better, and
that his energy level was improving. (Tr. at 277, 343.) He did not
visit Dr. Ahmed again until October, 2003, at which time he
reported feeling better about his family and son. He was not

15

suffering panic attacks at that time, and again exhibited good eye contact, a calm and cooperative mood, and no delusions.   (Tr. at 339.) Dr. Ahmad continued his medications and recommended he follow up at the regular three-month interval.   (Tr. at 340.)

The court finds that substantial evidence supports the ALJ's rejection of Dr. Ahmad's Medical Assessment form, due to the fact that it is inconsistent with the remainder of the record and its findings are not well-supported.

The regulations provide that if the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527.   These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors.   Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."   Id. § 404.1527(d)(2).

The ALJ complied with the law in these respects as well. Claimant did not seek mental health treatment from any other source, and so factors (1),(2) and (5) above do not apply. However, a review of the ALJ's summarization and analysis on pages 15-20 reveals that he carefully searched the medical evidence for

16

supportability and consistency.  After his review, the ALJ remarked that Claimant's level of treatment had been conservative: Claimant saw a counselor only once a month and Dr. Ahmad only once every three months for medication management. (Tr. at 21.) If a claimant were under the restrictions Dr. Ahmad noted in the form, one would expect more frequent or more aggressive treatment in order to overcome such limitations.  Thus, substantial evidence supports the ALJ's conclusion, and he satisfied the regulation by stating why he afforded Dr. Ahmad's opinion little weight.  (Tr. at 17.)

The court proposes that the presiding District Judge find that the Commissioner's decision with respect to Claimant's mental impairments and the weight afforded to the opinions of his treating physician is supported by substantial evidence.

2.  *Credibility*

Claimant asserts that the ALJ erred in finding that Claimant was not fully credible, and erred in his assessment of Claimant's pain.  (Pl.'s Br. at 13-5.)

A two-step process is used to determine whether a claimant is disabled by pain.  First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged.  20 C.F.R. § 404.1529(b)(2003); SSR 96-7p, 1996 WL 374186 (July 2, 1996); see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). When a claimant proves the existence of a medical condition that could cause pain, "the claimant's

17

subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4)(2003). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(2003).

Pursuant to <u>Craig v. Chater</u>, supra, an ALJ is not precluded from considering the lack of objective evidence of pain or the lack of other corroborating evidence as factors in his decision.  The only prohibited analysis is one in which the ALJ rejects allegations of pain <u>solely</u> because the pain itself is not supported by objective medical evidence.

In this case, the ALJ applied the two-step analysis and concluded that Claimant satisfied step (1) by demonstrating a condition which could reasonably be expected to produce pain and other symptoms.  (Tr. at 20.)  He then evaluated those specific factors set forth above.  He found that Claimant had minimized his activities of daily living, but that the self-imposed restrictions were not warranted.  The ALJ considered the activities and factors which aggravated Claimant's pain, as well as Claimant's description of the pain.  He considered the measures Claimant used to decrease or alleviate the pain.  (Tr. at 20-1.)

The ALJ observed that the objective findings and degree of treatment did not support Claimant's testimony of disabling symptoms.  (Tr. at 21.)  Notably, Dr. Ranavaya opined that Claimant could return to work, based on his clinical examination.  (Tr. at 21, <u>citing</u> tr. at 302-11.)  Manipulations and maneuvers of Claimant's body did not suggest that his reported pain was due to any axial pathology as of December 2001.  (Tr. at 21-2, <u>citing</u> tr.

19

at 155.)  On June 26, 2002, Claimant's range of motion in his neck and shoulders was not significantly limited.  (Tr. at 22, <u>citing</u> tr. at 235-6.)  While there was tenderness and restricted range of motion in Claimant's lower back, there was no atrophy and the circumferences of his legs were the same. (Tr. at 22, <u>citing</u> tr. at 234.) Clinical findings of May 23, 2003 were unimpressive.  (Tr. at 22, <u>citing</u> tr. at 313-7.) The ALJ found that these inconsistencies and minimal medical findings indicated that Claimant was not entirely credible with respect to his complaints of pain. (Tr. at 22.)

Claimant argues that the disc bulge at L4-5, L5-S1 and L1-2 with dessication would support his back complaints. (Pl.'s Br. at 14.)  While it is true that disc bulges could certainly cause back pain, Claimant's argument dodges the facts above: Claimant's clinical performances and findings did not correlate with a disabling degree of pain and limitation.  In addition to the above, the court notes that in June, 2003, Dr. Baisis, a neurosurgeon, detected only moderate restrictions in Claimant's range of motion in his lumbar spine, without motor or sensory loss of an anatomical distribution. (Tr. at 336.) Dr. Baisis recommended only pain management, massage therapy, and pain medications.  (Tr. at 336.) Likewise, Dr. Agas, who had diagnosed the bulging discs and dessication, recommended only analgesics and lumbar therapy. (Tr. at 270.)  A prescription for therapy indicates that a physician

hopes to see his patient become <u>more</u> active, not less active, as disability would indicate.   Moreover, Claimant refused lumbar therapy; and Dr. Agas commented that he could only offer pain medications and muscle relaxants in the absence of this treatment. (Tr. at 285.)

This lack of corroborating evidence supports the ALJ's conclusion that while Claimant had pain associated with a demonstrated medical condition, he did not have pain to the disabling degree that he alleged. The court proposes that the presiding District Judge find that the ALJ's decision was supported by substantial evidence in this respect.

*(3)  Combination of Impairments*

Claimant argues that the ALJ failed to consider the combined effect of his impairments.  (Pl.'s Br. at 15-6.) Claimant concedes that the ALJ properly declined to consider the effects of his alcohol use, given Claimant's testimony that he had drunk all of his life and it did not interfere with his ability to work. However, Claimant argues that the ALJ should have considered his pain and panic attacks in combination.  (Pl.'s Br. at 15-6.)

A review of the decision reveals that the ALJ did in fact consider Claimant's impairments in combination.   First, the ALJ quoted language from the applicable regulations pertaining to his obligation to consider impairments in combination.  (Tr. at 13, <u>citing</u> 20 C.F.R. §§ 404.1520, 1523 (2003).)   The ALJ then

21

summarized all of Claimant's records, including those relating to pain and to his panic attacks. (Tr. at 14-9.) He summarized Claimant's testimony at the hearing relating to pain and panic attacks. (Tr. at 18-9.) He found that Claimant had severe impairments of lumbosacral disc disease, chronic pain syndrome, and depression. (Tr. at 19.) He stated that he considered whether the impairments "either singly or in combination" met or equaled a Listing. (Tr. at 19.) He acknowledged his obligation to consider the effect of "*physical and/or mental limitations* that affect the ability to perform work-related tasks" found in 20 C.F.R. § 404.1527 and SSR 96-2P and 96-6P. (Tr. at 20; emphasis added.) In determining Claimant's residual functional capacity, the ALJ considered both Claimant's physical limitations and his mental limitations. (Tr. at 22.) He gave particular consideration to Dr. Ahmad's Mental Assessment, and discussed the reasons he found it unreliable. Because, as discussed above, the objective evidence of record did not establish limitations beyond what the ALJ determined, there was no error in his decision concerning Claimant's residual functional capacity.

The court proposes that the presiding District Judge find that the ALJ properly considered Claimant's impairments in combination, and that the Commissioner's decision was supported by substantial evidence in this respect.

*4.  Substantial Evidence*

Claimant's final argument is that the ALJ's decision was not supported by substantial evidence as a whole.  (Pl.'s Br. at 16-7.) As articulated above, the court finds no deficiencies in the ALJ's decision, and thus proposes that the presiding District Judge find that the Commissioner's decision was supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to Chief Judge David A. Faber.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

23

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

   August 17, 2005   
Date

Mary E. Stanley
United States Magistrate Judge